UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHAD HARPER,

                        Plaintiff,

    - against -

NEW YORK CITY TRANSIT AUTHORITY,
WILLIAM CREEL (Asst. Train Dispatcher),
JOHN HOBAN (Superintendent) and
SHAWN BLAKELY (Supervisor),

                        Defendants.

------------------------------------------------------------x

**COMPLAINT**

**Civ.: 17-6979**

**JURY TRIAL DEMANDED**

Plaintiff, CHAD HARPER, by and through his attorney, DAVID B. CALENDER, ESQ, as

and for his Verified Complaint against the defendants, respectfully shows to the Court and alleges:

## NATURE OF THE CLAIMS

1.    This is an action for declaratory, injunctive and equitable relief, as well as monetary

damages, to redress defendants' unlawful employment practices, including their discriminatory

treatment, harassment and unlawful retaliation against plaintiff due to his disability and his

complaints of discrimination and other conduct in opposition to discrimination, in violation of the

Rehabilitation Act of 1973, 29 U.S.C. Sections 701 to 796 (as against defendant NEW YORK

CITY TRANSIT AUTHORITY), the Americans with Disabilities Act of 1990, 42 U.S.C. Sections

12101 to 12213 (as against defendant NEW YORK CITY TRANSIT AUTHORITY), the New

York State Human Rights Law, N.Y Exec. Law Sections 290 to 297 (as against defendants

WILLIAM CREEL, SHAWN BLAKELY, and JOHN HOBAN in their individual capacity), New

York Executive Law Sections 290 et seq., the New York City Human Rights Law, N.Y.S. Admin.

Code Sections 8-101 to 131 (as against defendants WILLIAM CREEL (Asst. Train Dispatcher),

SHAWN BLAKELY (Train Service Supervisor), and JOHN HOBAN (Superintendent) in their individual capacity).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and Local law pursuant to 28 U.S.C. Section 1367(a).

3.    Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4.    Jurisdiction for plaintiff's State claims is appropriate pursuant to 28 U.S.C. Section 1367.

5.    The individual defendant sued herein, SHAWN BLAKELY (Train Service Supervisor), is sued both in his individual and official capacities.

6.    The individual defendant sued herein, WILLIAM CREEL (Asst. Train Dispatcher), is sued in his individual capacity.

7.    The individual defendant sued herein, JOHN HOBAN (Superintendent), is sued in his individual capacity.

8.    Venue is appropriate pursuant to 28 U.S.C. Section 1391(b)(1) and (2).

9.    That defendant NEW YORK CITY TRANSIT AUTHORITY received actual notice of plaintiff's claim herein on or about January 12, 2016, when plaintiff reported to defendant

2

JOHN HOBAN prior and ongoing incidents of being ridiculed by Supervisor Miller for using the bathroom too much because of plaintiff's medical condition, to wit: Multiple Sclerosis.

10. That the defendant NEW YORK CITY TRANSIT AUTHORITY is vicariously liable to the plaintiff for the acts and/or omission of the individual defendants, common law torts via the principle of *respondeat superior*.

11. That Section 1601 of the New York Civil Practice Law and Rules does not apply pursuant to the exception provided by CPLR 1602(1)(b).

12. That a notice of plaintiff's complaint for violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 was filed with the EEOC and the EEOC acknowledged receipt of such complaint on or about June 28, 2016.

13. That plaintiff intends to file a further complaint with the EEOC complaining of continuing retaliation against the plaintiff.

14. That on June 16, 2017 the EEOC issued and mailed to plaintiff a Notice of Dismissal and Right to Sue letter, which plaintiff received on June 20, 2017.

## PARTIES

15. That at all times hereinafter mentioned, plaintiff CHAD HARPER was and still is a citizen and resident of the County of Queens, City and State of New York and is employed by defendant NEW YORK CITY TRANSIT AUTHORITY (hereinafter "TRANSIT AUTHORITY") as a Conductor-Platform Controller, assigned to defendant's Grand Central Station in Manhattan, County, City and State of New York.

16. That at all times hereinafter mentioned, defendant WILLIAM CREEL was employed

3

by defendant TRANSIT AUTHORITY as an Assistant Train Dispatcher, assigned to defendant TRANSIT AUTHORITY's Grand Central Station in Manhattan, County, City and State of New York.

17.    That at all times hereinafter mentioned, defendant JOHN HOBAN was employed by defendant TRANSIT AUTHORITY as a Superintendent, assigned to defendant TRANSIT AUTHORITY's Grand Central Station in Manhattan, County, City and State of New York.

18.    That at all times hereinafter mentioned, defendant SHAWN BLAKELY was employed by defendant TRANSIT AUTHORITY as a Train Service Supervisor, assigned to defendant TRANSIT AUTHORITY's Grand Central Station in Manhattan, County, City and State of New York.

19.    That at all times hereinafter mentioned, defendant NEW YORK was and still is a domestic municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

20.    That at all times hereinafter mentioned, defendant TRANSIT AUTHORITY, its agents, servants and/or employees employed, operated, maintained, and controlled the New York City subway system, including but not limited to the Grand Central Station and all the TRANSIT AUTHORITY officers thereof.

21.    Defendant TRANSIT AUTHORITY is ultimately responsible for the policies, practices, and customs promulgated by it, as well as the hiring, screening, training, supervising, controlling and disciplining of TRANSIT AUTHORITY employees.

22.    Defendant TRANSIT AUTHORITY employs more than fifteen employees for each

4

working day in each of twenty or more calendar weeks in the current and preceding calendar year.

23.    Each and all of the acts of the defendants alleged herein were performed by the defendants, their agents, servants and employees acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of New York, the City of New York, and under the authority of their office as members and representatives of defendant TRANSIT AUTHORITY.

24.    Defendant TRANSIT AUTHORITY is vicariously liable for the torts committed pursuant to New York law by its agents, servants and/or employees in the course of their employment.

## STATEMENT OF FACTS

### Defendants' Hostile Work Environment and Adverse Employment Actions Against the Plaintiff

25.    Plaintiff was hired by defendant TRANSIT AUTHORITY as a Conductor on March 19, 2012.

26.    On or about July 9, 2012, plaintiff was experiencing vision problems and went to the emergency room of Mount Sinai Hospital to seek treatment.

27.    On or about July 10, 2012 plaintiff reported his vision problem to defendant TRANSIT AUTHORITY's medical staff and sought medical treatment in relation thereto.

28.    After disclosing his symptoms to defendant TRANSIT AUTHORITY, plaintiff saw defendant's doctors in connection with his vision complaints on several occasions, at approximately six-month intervals.

29.     Based on plaintiff's complaints, defendant TRANSIT AUTHORITY's doctors restricted plaintiff's duties to those of a Conductor-Platform Controller.

30.     In or about November 2012, plaintiff was formally diagnosed by a neuro-ophthalmologist with Multiple Sclerosis.

31.     The disease causes plaintiff to be disabled because it adversely affects plaintiff's vision, his ability to eat and swallow, and his bladder which results in incontinence requiring frequent, sudden and urgent trips to the bathroom to urinate.

32.     An attack of multiple sclerosis occurs without warning, and can be triggered by stress, heat, infection and fatigue.

33.     From July 2012 through June 7, 2014, plaintiff worked at various locations in the subway system and performed satisfactorily as a Platform Controller without the need for accommodation for his multiple sclerosis.

34.     On or about June 8, 2014, plaintiff started working on the platform at the Grand Central Station in Manhattan. There plaintiff began to feel the negative effects of heat on his multiple sclerosis. Plaintiff disclosed his medical condition to Supervisor Derrick Miller and requested that he provide a reasonable accommodation of his disability. Specifically, plaintiff explained the effects of heat on his illness of multiple sclerosis and requested that he be assigned to a cooler platform.

35.     Initially, Supervisor Miller accommodated plaintiff and assigned him to a cooler platform but thereafter he began assigning plaintiff to platforms that were very warm or hot, in spite of plaintiff's complaints.

6

36.    When plaintiff appealed to be transferred to a cooler platform, Supervisor Miller raised his voice and stated, "If you cannot do the job maybe you should be demoted to a cleaner." Supervisor Miller continued making derisive remarks to plaintiff and refused to provide plaintiff with the requested accommodation.

37.    Plaintiff worked with Supervisor Miller from June 2014 until December 2014. After his initial outburst about plaintiff being demoted to a cleaner, Supervisor Miller began accommodating plaintiff's disability with cooler platform locations. However, he continually made derisive remarks to plaintiff, criticized plaintiff for "using the bathroom too much," and constantly demanded to know why plaintiff used the bathroom so much.

38.    Plaintiff then changed locations and reported to Main Street from December 2014 until November 2015.

39.    In early December 2015, plaintiff was again assigned to the Grand Central Station, where he was placed under the supervision of defendant WILLIAM CREEL.

40.    During plaintiff's initial interaction with him, defendant WILLIAM CREEL told plaintiff that he knew Supervisor Miller and that, when he saw that plaintiff was assigned to work at the Grand Central Station, they were "chomping at the bit" to work with plaintiff because defendant WILLIAM CREEL had heard about plaintiff from Supervisor Miller and knew that plaintiff would be "looking for special treatment."

41.    In making the "special treatment" remark, defendant WILLIAM CREEL was referring to plaintiff's medical issue and plaintiff's need of, and his requests for, reasonable accommodation for his multiple sclerosis.

7

42. Thereafter, at least once a week, defendant WILLIAM CREEL made derogatory comments to and about plaintiff in front of other supervisors and co-workers, criticizing and admonishing plaintiff for conduct that was not in violation of defendant TRANSIT AUTHORITY's rules and which plaintiff's co-workers engaged in without criticism.

43. Defendant WILLIAM CREEL frequently admonished plaintiff for using the bathroom too much. Plaintiff's increased use of the bathroom is caused by loss of strength in bladder control and sphincter control, which are symptoms of his multiple sclerosis. Plaintiff repeatedly explained this to defendant WILLIAM CREEL but the admonitions continued.

44. In the first few weeks of working with defendant WILLIAM CREEL, he told plaintiff in the presence of plaintiff's co-workers that if plaintiff needed to use the bathroom so much maybe he needed to provide a doctor's note. He remarked on one occasion that if workers used the bathroom too much they could be disciplined.

45. Plaintiff felt embarrassed and intimidated because he was being singled out for adverse treatment solely because of the effects of his disability.

46. On or about December 24, 2015, defendant SHAWN BLAKELY, one of defendant TRANSIT AUTHORITY's Train Service Supervisors, accused plaintiff of being late for work and further accused plaintiff of being out of uniform. Both accusations were false and were known to defendant SHAWN BLAKELY to be false.

47. At the aforesaid time and place, defendant SHAWN BLAKELY threatened to take plaintiff out of service for "reasonable suspicion of being under the influence." Plaintiff denied the accusation. In fact, plaintiff was not, and defendant SHAWN BLAKELY knew that plaintiff was

8

not, under the influence of anything.

48.    Plaintiff was not sent for testing but instead was sent home for the day and docked five (5) hours' pay without any or any just cause.

49.    On or about December 24, 2015, defendant SHAWN BLAKELY falsely reported to defendant WILLIAM CREEL that plaintiff was out of uniform and that plaintiff was not wearing his vest, whereupon defendant WILLIAM CREEL informed plaintiff that plaintiff's hours were being cut and sent plaintiff home, based upon defendant SHAWN BLAKELY's aforesaid false accusation.

50.    Plaintiff attempted to explain that the rules of defendant TRANSIT AUTHORITY did not require plaintiff to be in uniform before being assigned to his platform location, but defendant WILLIAM CREEL told him to "shut up" and offered plaintiff the choice of being sent home for being out of uniform or being taken out of service for insubordination.

51.    Defendant WILLIAM CREEL told plaintiff that plaintiff had to be "submissive" to all supervisors and could not say "listen" to a supervisor.

52.    Further, defendant WILLIAM CREEL subjected plaintiff to hostile and threatening statements, including but not limited to the following: "We have the power to write you up, create a paper trail and get you fired;" "Maybe if you apologized, say you're sorry, even if you're fucking lying, and suck him (Supervisor Blakely) off for the fucking day and make it go away;" "If Blakely is lying, tough about it, get over it, blow him for the day;" "They can make things up and it will be believed because they are supervisors;" "You have no witnesses. He [Blakely] will be believed because he is the supervisor;" and "You have no paper trail. Next time you will be written up for

9

insubordination and you will be fired."

53.    Plaintiff was alarmed and intimidated by the words "submissive" and "blow him."

54.    Defendant SHAWN BLAKELY admitted to defendant WILLIAM CREEL that he lied about plaintiff being under the influence, but nevertheless requested that defendant WILLIAM CREEL write up plaintiff because plaintiff was "going to go in the crew room and say how I lied."

55.    During the aforesaid interaction, defendant WILLIAM CREEL told plaintiff: "If you have a serious illness you should not be here, you should be on disability." Defendant JOHN HOBAN  stated that "this is going to end one way or another. You're going to do your job or you're not going to be here anymore." At the end of the meeting, plaintiff was told that he was looking for special treatment because of his illness.

56.    Plaintiff requested a G-2 Correspondence Sheet to document the incident and to complain to the TRANSIT AUTHORITY's Equal Employment Opportunity (EEO) office about the treatment received from defendant SHAWN BLAKELY.  Defendant WILLIAM CREEL denied plaintiff's request and refused to give plaintiff the requested G-2 Correspondence Sheet.

57.    In denying plaintiff's request aforesaid, defendant WILLIAM CREEL falsely accused plaintiff of "threatening" defendant SHAWN BLAKELY by asking for a G-2 Correspondence Sheet.

58.    By reason of the foregoing, plaintiff was denied an opportunity to pursue a complaint to the EEO office to resolve his grievance.

59.    Upon information and belief, defendant TRANSIT AUTHORITY's Department of Equal Employment Opportunity & Diversity (EEO) initiated an investigation of the aforesaid

events.

60.     Upon further information and belief, defendant TRANSIT AUTHORITY's EEO office failed to complete its investigation of plaintiff's complaint.

61.     By reason of the foregoing, defendants WILLIAM CREEL and SHAWN BLAKELY created a hostile work environment and further denied plaintiff an opportunity to pursue a complaint through the EEO office to resolve his grievance.

62.     The foregoing unlawful conduct was actuated by unlawful discriminatory animus toward plaintiff by defendants WILLIAM CREEL and SHAWN BLAKELY because of plaintiff's disability. By reason thereof, plaintiff suffered mental anguish and emotional distress for which defendants are liable to plaintiff.

63.     On or about December 30, 2015, plaintiff attempted to sign in on the attendance sheet but was prevented from doing so by defendant WILLIAM CREEL, who moved the sheet from under plaintiff's pen and demanded that plaintiff say good morning.

64.     Defendant WILLIAM CREEL repeated his demand and began yelling at and berating plaintiff in front of supervisors and customers/passengers. Defendant's tirade included, but was not limited to, the statement "I don't give a fuck about these people," in reference to the supervisors and customers who were observing his outburst.

65.     As a result of the foregoing, plaintiff felt stressed and went on vacation for approximately nine (9) days.

66.     On or about January 11, 2016, plaintiff was assigned to the 14th Street Union Square subway station in Manhattan.

11

67.     While on the Union Square platform and after responding to a walkie-talkie call from the Rail Control Center (RCC) regarding a sick passenger on a train in the station, plaintiff turned around to see defendant WILLIAM CREEL standing behind him.

68.     Defendant WILLIAM CREEL thereupon accused plaintiff of not responding to his (CREEL's) efforts to reach plaintiff by walkie-talkie, and started yelling at plaintiff, calling plaintiff a liar and cursing at plaintiff as passengers walked by. When plaintiff requested that he stop yelling and cursing and alerted him to the presence of passengers, defendant WILLIAM CREEL responded, "Fuck these people, they don't work for me, they're making my job harder."

69.     At the end of his shift that day, defendant WILLIAM CREEL summoned plaintiff to the office and gave him a formal written reinstruction, which is a disciplinary action. Plaintiff protested that the action was unfounded, refused to sign the reinstruction, and requested to see a superintendent.

70.     Prior to leaving work that day, plaintiff spoke with Pearl White, Superintendent, about defendant WILLIAM CREEL's unjustified disciplinary write-up on that day as well as his past harassment of plaintiff. Superintendent White informed plaintiff that defendant WILLIAM CREEL, in addition to writing up plaintiff, was also seeking to take plaintiff out of service.

71.     Upon information and belief, Superintendent White wrote a Memorandum to Superintendent Lorraine Lassiter and defendant JOHN HOBAN (who was in charge of the Grand Central Platform Controller's Office) regarding her conversation with plaintiff. She requested that defendant JOHN HOBAN meet with plaintiff the following day, January 12, 2016.

12

## Defendants' Unlawful and Retaliatory Harassment and Disciplinary Action against Plaintiff for Engaging in Protected Activity

72.    On January 12, 2016, plaintiff met with defendant JOHN HOBAN at the Platform Controller's Office, Grand Central Station. Defendants WILLIAM CREEL and SHAWN BLAKELY were also in attendance.

73.    At the said January 12, 2016 meeting, plaintiff handed defendant JOHN HOBAN a written complaint of harassment in the workplace in violation of the Americans with Disabilities Act and verbally described the events of December 24, 2015 and January 11, 2016.

74.    In making the aforesaid complaint, plaintiff was engaging in protected activity.

75.    After the meeting, defendant WILLIAM CREEL approached plaintiff to engage in conversation and plaintiff was immediately struck by a panic attack and an overwhelming feeling of stress.

76.    On or about January 20, 2016 at the 125th Street subway station, while plaintiff was on a general break (called a "comfort"), plaintiff used the restroom and, upon exiting the facility, sat on a chair to adjust his socks and shoes. Defendant SHAWN BLAKELY admonished plaintiff in a hostile manner, telling plaintiff that a comfort is not to sit down and relax.

77.    On or about January 22, 2016, defendant WILLIAM CREEL told plaintiff, "If you have a serious illness you should not be here; you should be on disability."

78.    On or about January 22, 2016, Nelson Ortiz, Superintendent, questioned plaintiff about using a cell phone while on his comfort break on January 20, 2016. Plaintiff did not use a cell phone while on his comfort break on January 20, 2016 and felt harassed, annoyed and intimidated by Superintendent Ortiz' unfounded inquiry.

13

79.    Superintendent Ortiz thereupon escorted plaintiff to defendant JOHN HOBAN's office, where defendant JOHN HOBAN yelled at plaintiff and wrote up plaintiff for using a cell phone while on comfort break on January 20, 2016.

80.    Plaintiff insisted that he did not use his cell phone at the time claimed, and therefore refused to sign the write-up report which falsely stated that he did.

81.    During the meeting on January 22, 2016, defendant JOHN HOBAN characterized plaintiff's prior requests for reasonable accommodation based on his disability and complaints about disability-based harassment with remarks such as, "You think you're special" and "You think you will receive special treatment."

82.    On or about February 10, 2016, after taking an authorized comfort break while at the 14th Street Union Square subway station, defendant SHAWN BLAKELY wrote plaintiff up and took him out of service for leaving the premises during his comfort break without permission. Upon information and belief, defendant TRANSIT AUTHORITY has no rule prohibiting plaintiff or any other employee from leaving the premises while on authorized comfort break.

83.    On or about February 16, 2016, defendant WILLIAM CREEL brought plaintiff up on charges of insubordination in a report that contained false accusations, namely, that plaintiff had refused to put on his vest. As a result, plaintiff was taken out of service and sent to the TRANSIT AUTHORITY Disciplinary Office.

84.    Supervisors in the TRANSIT AUTHORITY Disciplinary Office reversed defendant WILLIAM CREEL's charges and restored plaintiff to service.

85.    Although he was restored to service by the TRANSIT AUTHORITY Disciplinary

14

Office, plaintiff lost a day's pay.

86. On or about February 17, 2016, defendant WILLIAM CREEL refused to assign plaintiff his platform location for work that day. Plaintiff informed him that he had no alternative but to report said refusal to the Superintendent's office, to which defendant WILLIAM CREEL responded, "If you leave you will be AWOL." Plaintiff nevertheless went to the Superintendent's office but there was no one there. As a result, plaintiff felt helpless and intimidated.

87. On or about February 22, 2016, plaintiff was in the vicinity of the Crew Room and/or the locker room engaged in a private conversation with a co-worker. Plaintiff shared a joke with the co-worker, unaware that anyone besides himself and the co-worker was privy to the conversation.

88. On or about February 24, 2016, when plaintiff reported to work he was directed to go to defendant TRANSIT AUTHORITY's Disciplinary Office, where he was informed that he had been taken out of service because an employee felt threatened by a comment plaintiff made during his conversation with his co-worker.

89. Upon information and belief, the decision to take plaintiff out of service was a pretext. At no time did plaintiff make any threatening remark to or about any fellow employee or co-worker. The decision to take plaintiff out of service was, in fact, actuated by animus against plaintiff due to his disability and because plaintiff complained that he was being harassed and was denied reasonable accommodation for his disability.

90. Plaintiff has not been permitted to return to his duties from February 23, 2016 to the present time.

91.    On or about March 8, 2016 and August 18, 2017, plaintiff was served with a Disciplinary Notification in relation to the February 16, 2016 insubordination charge.

92.    At a Step I Hearing held on or about August 21, 2017, defendant NEW YORK CITY TRANSIT AUTHORITY's ADIV Transportation Operations Department sustained charges of conduct unbecoming an N.Y.C.T.A. employee; threatening an employee; and workplace violence and issued a recommendation that plaintiff be dismissed.

93.    At a Step II Hearing held on or about August 30, 2017, the aforementioned charges and recommendation were sustained.

94.    On June 28, 2016, plaintiff filed EEOC Charge # 520-2016-02551, alleging violation of the Americans with Disabilities Act of 1990, as amended.

95.    Plaintiff intends to supplement his complaint to the EEOC to include an allegation of continuing retaliation.

96.    That the terms and conditions of plaintiff's employment have been significantly altered and worsened by the actions of defendants SHAWN BLAKELY, WILLIAM CREEL and JOHN HOBAN as hereinabove mentioned. Plaintiff has been and is being subjected to an ongoing hostile work environment due to the defendants' denial of reasonable accommodation of plaintiff's disability and the retaliatory actions taken against him for his complaints to the TRANSIT AUTHORITY's EEO office and the Equal Employment Opportunity Commission.

97.    Defendants' unlawful conduct has caused plaintiff mental anguish and emotional distress.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of 29 U.S.C. Sections 701, et seq.)

98.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 97, inclusive, as if fully set forth herein.

99.    Defendants have discriminated against plaintiff on the basis of his disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. Sections 701 to 796, by denying to him the same terms and conditions of employment available to employees who do not suffer from a disability, including but not limited to, unlawfully harassing plaintiff, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, and penalizing plaintiff without just cause, resulting in mental anguish, emotional distress and loss of pay.

100.    As a direct and proximate result of defendants' unlawful discriminatory conduct, harassment and retaliation in violation of the Rehabilitation Act of 1973, plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation, benefits and promotional prospect, for which he is entitled to an award of monetary damages and other relief.

101.    As a direct and proximate result of defendants' unlawful discriminatory conduct, harassment and retaliation in violation of the Rehabilitation Act of 1973, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

102.    Defendants' unlawful discriminatory conduct, harassment and retaliation constitute

17

malicious, willful and wanton violations of the Rehabilitation Act of 1973 for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of 29 U.S.C. Sections 701, et seq.)

103.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 102, inclusive, as if fully set forth herein.

104.    Defendant NEW YORK CITY TRANSIT AUTHORITY, by its servants, agents and/or employees, has retaliated against plaintiff by, *inter alia*, falsely accusing plaintiff of insubordination and repeatedly admonishing plaintiff verbally and in writing without just cause.

105.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the Rehabilitation Act of 1973, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

106.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the Rehabilitation Act of 1973, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

107.    Defendants' unlawful discriminatory conduct and harassment constitute malicious, wilful and wanton violations of the Rehabilitation Act of 1973 for which plaintiff is entitled to an

award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of 42 U.S.C Sections 12101, et seq.)

108.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 107, inclusive, as if fully set forth herein.

109.    Defendants have discriminated against plaintiff on the basis of his disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12101 to 12213, by denying to him the same terms and conditions of employment available to employees who do not suffer from a disability, including but not limited to, unlawfully harassing plaintiff, denying plaintiff reasonable accommodation for his disability, denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, and penalizing plaintiff without just cause, resulting in mental anguish, emotional distress and loss of pay.

110.    As a direct and proximate result of defendants' unlawful discriminatory conduct, harassment and retaliation in violation of the Americans with Disabilities Act of 1990, plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation, benefits and promotional prospect, for which he is entitled to an award of monetary damages and other relief.

111.    As a direct and proximate result of defendants' unlawful discriminatory conduct, harassment and retaliation in violation of the Americans with Disabilities Act of 1990, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of

19

monetary damages and other relief.

112.   Defendants' unlawful discriminatory conduct, harassment and retaliation constitute malicious, willful and wanton violations of the Americans with Disabilities Act of 1990 for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. Sections 12101, et seq.)

113.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 112, inclusive, as if fully set forth herein.

114.   Defendant NEW YORK CITY TRANSIT AUTHORITY, by its servants, agents and/or employees, has retaliated against plaintiff by, *inter alia*, falsely accusing plaintiff of insubordination and repeatedly admonishing plaintiff verbally and in writing without just cause.

115.   As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the Americans with Disabilities Act of 1990, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

116.   As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the Americans with Disabilities Act of 1990, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

117.    Defendants' unlawful discriminatory conduct and harassment constitute malicious, willful and wanton violations of the Americans with Disabilities Act of 1990, for which plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of New York State Human Rights Law, N.Y. Exec. Law Sections 290, et seq.)

118.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 117, inclusive, as if fully set forth herein.

119.    Defendants have discriminated against plaintiff on the basis of his disability, in violation of the New York State Human Rights Law by denying him the same terms and conditions of employment available to employees who do not have a disability, including but not limited to unlawfully denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, and denying plaintiff reasonable accommodation for his disability, compensation, benefits and other perquisites equal to that of employees who do not have a disability.

120.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

121.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, plaintiff has suffered and

21

continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Retaliation in Violation of New York State Human Rights Law)**

122.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 121, inclusive, as if fully set forth herein.

123.   Defendant NEW YORK CITY TRANSIT AUTHORITY, by its servants, agents and/or employees, has retaliated against plaintiff by, *inter alia*, falsely accusing plaintiff of insubordination and repeatedly admonishing plaintiff verbally and in writing without just cause, in violation of the New York State Human Rights Law for his opposition to defendants' discriminatory practices toward him.

124.   As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

125.   As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York State Human Rights Law, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

and emotional pain and suffering, for which plaintiff is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of New York City Human Rights Law)

126.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 125, inclusive, as if fully set forth herein.

127.    Defendants have discriminated against plaintiff on the basis of his disability, in violation of the New York City Human Rights Law by denying him the same terms and conditions of employment available to employees who do not have a disability, including but not limited to, unlawfully denying plaintiff the opportunity to work in an employment setting free of unlawful harassment, and denying plaintiff reasonable accommodation for his disability, compensation, benefits and other perquisites equal to that of employees who do not have a disability.

128.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

129.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

130.    Defendants' unlawful discriminatory conduct and harassment constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

**AS AND FOR AN EITHTH CAUSE OF ACTION**
**(Retaliation in Violation of New York City Human Rights Law)**

131.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 130, inclusive, as if fully set forth herein.

132.    Defendant NEW YORK CITY TRANSIT AUTHORITY, by its servants, agents and/or employees, has retaliated against plaintiff by, inter alia, falsely accusing plaintiff of insubordination and repeatedly admonishing plaintiff verbally and in writing without just cause, in violation of the New York City Human Rights Law for his opposition to defendants' discriminatory practices toward him.

133.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

134.    As a direct and proximate result of defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which plaintiff is entitled to an award of monetary damages and other relief.

135.    Defendants' unlawful discriminatory conduct and harassment constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, CHAD HARPER, prays that the Court enter judgment in his favor and against the defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.    An injunction and order permanently restraining defendants from engaging in such unlawful conduct;

C.    An order directing defendant NEW YORK CITY TRANSIT AUTHORITY to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D.    An order directing defendant NEW YORK CITY TRANSIT AUTHORITY to reinstate plaintiff in his position/duties as a Conductor-Platform Controller and restore five (5) sick days taken away from plaintiff without just cause; and restore

plaintiff's ability to earn overtime pay;

E.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

F.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for plaintiff's mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical and psychiatric injuries;

G.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate plaintiff for harm to his personal and professional reputation and loss/impairment of career fulfillment;

H.   An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus pre-judgment interest;

I.   An award of punitive damages;

J.   An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

K.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated

herein.

Dated: Valley Stream, New York
      September 13, 2017

                     DAVID B. CALENDER, ESQ.


                     By: _David B. Calender_
                     David B. Calender (DC 9300)
                     Attorney for Plaintiff
                     CHAD HARPER
                     108 South Franklin Avenue -- Suite 5
                     Valley Stream, N.Y. 11580
                     Telephone: (516) 837-3758
                     Facsimile:  (516) 837-3759

                     COUNSEL FOR PLAINTIFF

27